IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ESTATE OF LISA H.,**[1]

        Plaintiff,

    v.

**COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,**

        Defendant.

**Civ. No. 6:21-cv-01197-MC**

**OPINION AND ORDER**

_____

**MCSHANE, Judge**:

      Plaintiff brings this action for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income ("SSI") under the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff applied for SSI on January 29, 2019, alleging disability beginning March 15, 2017. Tr. 15, 236.[2] Her claim was denied initially and upon reconsideration. Tr. 15, 158, 168. Plaintiff timely requested a hearing and appeared before an ALJ on September 11, 2020. Tr. 15, 36. The ALJ denied Plaintiff's claim on November 19, 2020. Tr. 31. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–5. This appeal followed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

Plaintiff's sole argument is that the Commissioner failed to identify jobs existing in significant numbers in the national economy that Plaintiff can perform. Because Plaintiff submitted significant probative evidence of disparate job numbers that creates a conflict in the evidence, the Commissioner's decision is REVERSED and this matter is REMANDED for further proceedings.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998)).

## DISCUSSION

The Social Security Administration ("SSA") uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four and on the Commissioner

for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner may satisfy this burden by referring to the Medical-Vocational Guidelines ("Grids") or by obtaining testimony from a vocational expert ("VE"). *Tackett*, 180 F.3d at 1100–01. If the Commissioner fails to meet its burden, then the claimant is considered disabled. *Id.*

The only issue before the Court is whether the Commissioner's reliance on the VE's job numbers at step five was improper. Pl.'s Br. 4, ECF No. 15. Plaintiff argues that "[t]he Commissioner improperly accepted step five testimony" despite Plaintiff's rebuttal evidence showing disparate job numbers. *Id.* at 4, 7. Defendant responds that the ALJ reasonably relied on the VE's testimony at step five. Def.'s Br. 3, ECF No. 17.

At the administrative hearing, the VE testified that someone with Plaintiff's characteristics and limitations could perform two jobs that existed in the national economy: surveillance system monitor and semiconductor bonder. Tr. 55. The VE claimed that there were 6,260 surveillance system monitor jobs nationally and 115,000 semiconductor bonder jobs nationally. *Id.* The VE also provided the Dictionary of Occupational Title ("DOT") codes for each job. *Id.* On cross-examination, the VE testified that he obtained these job numbers from the Bureau of Labor Statistics. Tr. 57. Based on the VE's testimony, the ALJ determined that there are jobs existing in significant numbers that Plaintiff could perform. Tr. 30.

After the ALJ's unfavorable decision, Plaintiff submitted a letter to the Appeals Council arguing the "ALJ improperly found that there were jobs that exist in significant numbers in the

national economy that [she] can perform." Tr. 229–30. In this letter, Plaintiff included a report

from Job Browser Pro 2019 that showed disparate job numbers for surveillance system monitor

and semiconductor bonder. Tr. 231–34. This report suggests that in 2018, only 6,681 surveillance

system monitor jobs and 8 semiconductor bonder jobs existed nationally.[3] Tr. 232, 234. Plaintiff

used the same DOT codes that the VE used for each job. *See* Tr. 55, 231–34. The Appeals

Council received Plaintiff's additional evidence and made it part of the record but found no basis

to change the ALJ's decision. Tr. 1, 5–6.

      "A VE's recognized expertise provides the necessary foundation for his or her

testimony." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "[I]n the absence of any

contrary evidence, a VE's testimony is one type of job information that is regarded as inherently

reliable; thus, there is no need for an ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d

1040, 1051 (9th Cir. 2017). Even so, VE testimony is not irrefutable. *Id.* The Ninth Circuit

previously recognized an exception to the general rule that VE testimony is inherently reliable

where a plaintiff submits evidence of disparate job numbers using the same methodology as the

VE. In *Buck*, the plaintiff submitted post-hearing evidence of job numbers to the ALJ—allegedly

using the same software program as the VE—which showed significantly less jobs than the VE's

numbers. *Id.* at 1047. In light of the direct conflict in the evidence, the Ninth Circuit reversed and

remanded for further proceedings, opining that "the vast discrepancy between the VE's job

numbers and those tendered by [plaintiff], presumably from the same source, is simply too

striking to be ignored." *Id.* at 1052.

---

[3] Plaintiff presents varying numbers for the total jobs in the national economy she could perform. *Compare* Tr. 230 (alleging a total of 4,209 surveillance system monitor jobs) *with* Pl.'s Br. 6 (alleging a total of 5,689 jobs). Plaintiff does not explain how she arrived at these totals, so the Court uses the numbers from Plaintiff's Job Browser Pro report. *See* tr. 232, 234. Regardless, since "there is a reasonable probability that the outcome of [Plaintiff's] proceeding may have been different" had the Appeals Council credited any of these estimates, this discrepancy does not affect the outcome of the Court's decision. *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022).

That said, courts have consistently held that a VE's testimony is not undermined where the plaintiff challenges the VE's job numbers with the plaintiff's own lay interpretation of data from different sources. *See, e.g.*, *Kremlingson v. Saul*, 800 F. App'x 531, 532–33 (9th Cir. 2020) (concluding that the plaintiff's "lay interpretation" of job numbers she found online and of the VE's data was insufficient to preclude the ALJ from relying on the VE's testimony); *Tracey Anne P. v. Kijakazi*, No. 20cv1163, 2021 WL 4993021, at *11 (S.D. Cal. Oct. 27, 2021) (concluding that the plaintiff's "lay assessment" of Job Browser Pro data did not undermine the reliability of the VE's assessment of U.S. Department of Labor and Job Browser Pro data); *Dickerson v. Saul*, No. 20-cv-01585, 2021 WL 3832223, at *6 (D. Nev. Aug. 27, 2021) ("Plaintiff's assessment of the raw vocational data derived from Job Browser Pro and Occu-Collect does not undermine the reliability of the vocational expert's opinion.").

Since then, the Ninth Circuit recently addressed the issue of competing job numbers in two cases. In *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022), the Ninth Circuit held that the job numbers the plaintiff provided did not qualify as significant probative evidence because they relied on old data and unsupported methods. At the hearing, the VE used a software program to identify the number of jobs in the national economy based on their DOT codes. *Id.* at 1190. After the hearing, the plaintiff's attorney objected to the VE's calculations and submitted his own job numbers. *Id.* However, the attorney used data that was seven years old to come up with these numbers. *Id.* at 1194. He also used an unsupported method for calculating job numbers that required him to make an "improbable assumption." *Id.* Thus, the plaintiff's job numbers did not directly correlate to the DOT codes that the VE used. *See id.* at 1191, 1194. Under these circumstances, the plaintiff's job numbers "did not warrant the ALJ's further consideration." *Id.* at 1195.

By contrast, in *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022), the Ninth Circuit held that the job numbers the plaintiff provided qualified as significant probative evidence because they relied on a data source and methods frequently used by the SSA. At the hearing, the VE used SkillTRAN, a software program, to get the numbers for each DOT code. *Id.* at 831. Similarly, the plaintiff's attorney used Job Browser Pro, SkillTRAN's "flagship program," to come up with much lower job numbers than what the VE provided. *Id.* at 832. The attorney also used the "same DOT codes the VE had used" at the hearing. *Id.* at 837. Since the plaintiff's "evidence was produced using a data source and methodology frequently relied on by the SSA," the court remanded to allow the agency to address this inconsistency. *Id.*

The Commissioner argues that the reasoning in *Kilpatrick* controls here. Def.'s Br. 4. However, Plaintiff's case is distinguishable. While the plaintiff in *Kilpatrick* used old data and an unreliable method, Plaintiff here used recent software to produce job numbers. Further, Plaintiff relied on the software's internal computations to produce this data, rather than calculating her own estimates based on unsupported methods. As such, this case is more analogous to *White*. Like the plaintiff in *White*, Plaintiff used Job Browser Pro, a software program that "has been recognized . . . to be widely relied upon by vocational experts in estimating the number of relevant jobs in the national economy." 44 F.4th at 837 (quoting *Purdy v. Berryhill*, 887 F.3d 7, 14 (1st Cir. 2018)). Plaintiff also used the same DOT codes that the VE used to produce these numbers. Finally, while Job Browser Pro's employment estimates are drawn from several sources, a majority of these sources are the Bureau of Labor Statistics—the same source the VE here used to create his job number estimates. Tr. 57, 232, 234. Though Plaintiff here did not replicate the VE's exact methodology, Plaintiff produced job numbers "using a data source and methodology frequently relied on by the SSA." *White*, F.4th at 837. In fact, Plaintiff's data

sources significantly overlapped with the source on which the VE relied.

Ultimately, the Ninth Circuit directs the Court to "consider whether there is 'support for [a claimant's] counsel's approach' in generating job-number estimates in determining whether new evidence is significant and probative." *White*, 44 F.4th at 836 (quoting *Kilpatrick*, 35 F.4th at 1194). In light of this new precedent and for the reasons explained above, the Court finds that Plaintiff submitted significant probative evidence that conflicted with the VE's testimony. On remand, the agency must address and resolve this conflict in the evidence.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED and this matter is REMANDED for further proceedings in accordance with this opinion.

IT IS SO ORDERED.

DATED this 30th day of March, 2023.

_____s/Michael J. McShane_____ _____
Michael J. McShane
United States District Judge